2010-MAR-16 12:34 FROM-ABC LEGAL SERVICES +2132599413 T-039 P.006/007 F-338

FILED

10 MAR 16 PM 12:29

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:

VENABLE LLP
DOUGLAS C. EMHOFF (SBN 151049)
demhoff@venable.com
DAN CHAMMAS (SBN 204825)
dchammas@venable.com
JASON D. STRABO (SBN 246426)
jstrabo@venable.com
NOAH B. STEINSAPIR (SBN 252715)
nsteinsapir@venable.com
2049 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901

Attorneys for Defendant
TOO LAZY, LLC

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

BILLYE SERABIAN, individually and on behalf of a class of similarly situated individuals,

Plaintiffs,

v.

CELLCO PARTNERSHIP, a Delaware general partnership, TOO LAZY, LLC, a California limited liability company,

Defendants.

CASE NO. CV10-01891-RGK (JEMx)

**NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441 (B)**

**[DIVERSITY/CLASS ACTION FAIRNESS ACT]**

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendant TOO LAZY, LLC (hereinafter "Defendant"), Defendant in the action described below, hereby removes said action to the United States District Court for the Central District of California, the Western Division, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446 and 1453. Removal is based upon the following grounds:

1. An action entitled Billye Serabian, individually and on behalf of a class of similarly situated individuals v. Cellco Partnership, a Delaware general partnership, and Too Lazy, LLC, a California limited liability company, Case No. CV 090436, has been commenced and is now pending in the Superior Court of the State of California for the County of San Luis Obispo (the "State Court Action").

2. The State Court Action was commenced on or about July 23, 2009 by the filing of a Class Action Complaint ("Complaint"). Plaintiff served Defendant with a copy of the Complaint on February 16, 2010. A true and correct copy of the Complaint is attached hereto as Exhibit "A." Defendant has not been served with any other pleadings, papers and/or orders in the State Court Action.

3. This Notice of Removal is filed within the 30-day time period provided by 28 U.S.C. § 1446(b) in that it has been filed on March 16, 2010, within 30 days of Defendant's service of the Complaint on February 16, 2010. See, e.g., Murphy Bros v. Michetti Pipe Stringing, 526 U.S. 344, 352-355 (1999) (holding that the 30 day removal period is triggered when defendant is formally served).

4. In evaluating whether removal is effective in multiple defendant cases, federal courts generally apply the "rule of unanimity." See Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 681 (9th Cir. 2006). Under the "rule of unanimity," removal is not effective unless all defendants consent to, or join in, removal. Id. As a corollary to that rule, some courts have adopted the "first-served" rule. Schillinger v. 360Networks USA, Inc., 2006 U.S. Dist. LEXIS

31108, at *23 (Mar. 18, 2006). Under the "first-served" rule, a defendant's failure to remove operates as a waiver of the right to remove as to all later-served defendants. Id.

5. A number of courts have rejected the "first-served" rule in favor of the "last-served" rule. See, e.g., McKinney v. Board of Trustees of Mayland Community College, 955 F.2d 924, 928 (4th Cir. 1992) (adopting "last-served" rule); Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 533 (6th Cir. 1999) (applying "last-served" rule); Bailey v. Janssen Pharmaceutica, Inc., 536 F.3d 1202, 1205 (11th Cir. 2008) (rejecting "first-served" rule and adopting "last-served" rule). Under the "last-served" rule, the deadline for removal begins to run on the date on which the last defendant is served. United Steel Workers v. Shell Oil Company, 549 F.3d 1204, 1208 (9th Cir. 2008). To date, the Ninth Circuit Court of Appeals has declined to adopt either the "first-served" or "last-served" rule. Id.

6. The rationale behind the "first-served" rule is that when a defendant who has been properly joined and served fails to effect timely removal, that defendant can no longer consent to removal by later-served defendants, as required by the "rule of unanimity." Schillinger, 2006 U.S. Dist. LEXIS 31108, at *23. It follows, then, that where the requirement of unanimity is eliminated, so too is the "first-served" rule. Id. at *24.

7. Such is the case in actions removed to federal court under the Class Action Fairness Act of 2005 ("CAFA"). CAFA provides, in pertinent part: "[a] class action may be removed to a district court of the United States in accordance with section 1446...by any defendant without the consent of all defendants." 28 U.S.C. § 1453(b).

8. By eliminating the requirement that all defendants consent to removal, CAFA abrogates the "rule of unanimity." See Abrego, 443 F.3d at 681 ("Section 1453(b)...overrides the judge-created requirement that each defendant consent to

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

removal[.]"); United Steel Workers, 549 F.3d at 1208 ("one defendant may remove the entire action, including claims against all defendants...[and] because one defendant could procedurally remove the action as a whole, including all defendants, we need not concern ourselves with the circumstances pertinent to each defendant").

9. That abrogation, in turn, abolishes the corollary "first-served" rule. Springman v. AIG Mktg., 2007 U.S. Dist. LEXIS 84125, at *10-11 (S.D. Ill. Nov. 14, 2007) ("[b]ecause CAFA abolishes the unanimity rule with respect to removals under the statute, it also of necessity abolishes the so-called 'first-served defendant' rule"); Schillinger, 2006 U.S. Dist. LEXIS 31108, at *24 ("where the requirement of unanimity is eliminated, so too is the first-served defendant rule...[t]hus, because the CAFA eliminates the requirement of unanimity, presumably it eliminates the first-served defendant rule as well...."); Noto v. Daimler Chrysler Corp., 2008 U.S. Dist. LEXIS 16092, at *15 (E.D. La. Mar. 3, 2008) ("since the rationale behind applying the first-served defendant rule ... [is] because of the rule of unanimity of consent, if that rule is taken away, which occurs in Section 1453 cases, then the first-served defendant rule would also [be] abrogated").

10. This matter is being removed to federal court under CAFA. Accordingly, the "rule of unanimity" and its corollary, the "first-served" rule, do not apply in this matter. Because neither rule applies, and because this Notice of Removal has been filed within 30 days of service of the Complaint upon Defendant, it is timely irrespective of when the Complaint was served upon any other defendant in this matter.

11. This Court is the appropriate court to which the action must be removed because it is part of the "district and division embracing the place where" Plaintiff filed this action, the County of San Luis Obispo. 28 U.S.C. § 1446(a).

12. A copy of this Notice of Removal will be filed contemporaneously with the Clerk of the Superior Court of the State of California for the County of

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

San Luis Obispo, and will be served contemporaneously on all counsel of record, as required by 28 U.S.C. § 1446(d).

## FEDERAL JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

13. This Court has jurisdiction over this action pursuant to CAFA.

14. CAFA creates federal jurisdiction over lawsuits in which "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant," and involves a putative class that consists of more than 100 members. 28 U.S.C. §§ 1332(d)(2)(A) and (d)(5). Each of these three requirements is met.

## REQUIREMENT NO. 1: THE CLASS CONSISTS OF OVER 100 CLASS MEMBERS.

15. Plaintiff seeks to pursue this action on behalf of "[a]ll wireless telephone subscribers in the nation who suffered losses or damages as a result of Too Lazy billing for mobile content products and services…". (Complaint at ¶ 28.) Plaintiff further asserts that the putative "[c]lass consists of thousands of individuals…". (Id. at ¶ 29.) Defendant denies these allegations, however, accepting them as true, the class could encompass all of Defendant's customers, a number that greatly exceeds 100.

## REQUIREMENT NO. 2: THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000.

16. "[W]hen the plaintiff fails to plead a specific amount of damages, the defendant seeking removal 'must prove by a preponderance of the evidence that the amount in controversy requirement has been met." Lowdermark v. US Bank Nat. Assoc., 479 F.3d 994, 998 (9th Cir. 2007). "The demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

whether plaintiff is likely to win or be awarded everything." Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 449 (7th Cir. 2005); See also id. at 449 ("**The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties**. That the plaintiff may fail in its proof, and the judgment be less than the threshold (indeed, a good chance that the plaintiff will fail and the judgment will be zero) does not prevent removal.") (emphasis added).

17. Defendant disputes Plaintiff's claims and objects to any motion seeking class certification. However, for purposes of removal, Plaintiff's demand is in excess of $5,000,000, exclusive of interest and costs.

18. Plaintiff asserts the following causes of action on behalf of himself and the putative class: Violation of California Business and Professional Code § 17200, Unjust Enrichment; Trespass to Chattel; Tortious Interference with a Contract; and Breach of Contract.

19. Pursuant to Plaintiff's causes of action for violation of California Business and Professions Code section 17200 and unjust enrichment, Plaintiff seeks restitution of all of the proceeds from the purportedly unauthorized charges. (Id. at ¶¶ 40, 46.) Given the breadth of these claims, in essence, Plaintiff requests that Defendant return all of the money it has charged and received from its customers, the putative class, during the statutory period. Defendant has charged and received payments from customers in an amount greater than $5,000,000 during the last two years.

**REQUIREMENT NO. 3: THE CLASS MEMBERS ARE CITIZENS OF A STATE DIFFERENT THAN TOO LAZY.**

20. Parties to a class action are diverse where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Abrego, 443 F.3d at 678 (noting "CAFA's new minimal diversity requirements"). Plaintiff is a citizen of Connecticut. (Complaint at ¶ 1.)

21. Defendant is a citizen of California. Defendant is organized and

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

existing under the laws of the State of California and its principal place of business is in California.

22. Plaintiff is a citizen of Connecticut and seeks to represent a nationwide class that includes, "[a]ll wireless telephone subscribers in the nation who suffered losses or damages as a result of Too Lazy billing for mobile content products and services…." (Complaint at ¶ 28.) Although Defendant disputes this assertion, if it was true, the putative class would encompass Defendant's entire customer base. Well over two-thirds of its customers, the putative class, resides outside of the state of California.

23. Therefore, diversity of citizenship is established and remand is not even discretionary. See Fuller v. Home Depot Servs., 2007 U.S. Dist LEXIS 59770, *14 (N.D. Ga. Aug. 14, 2007) (if plaintiff cannot show that at least one-third of the putative class members reside in the same state as defendant, then the "discretionary exception is not applicable" and federal jurisdiction is mandatory.)

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

## INTRADISTRICT ASSIGNMENT

24. Plaintiff commenced this action in the Superior Court of California for the County of San Luis Obispo. Accordingly, pursuant to Article 1.5 of Central District General Order 08-05, this action should be assigned to the Western Division.

**WHEREFORE**, Defendant respectfully removes this action from the Superior Court of California, County of San Luis Obispo, Case No. CV 090436, to the United States District Court for the Central District of California, Western Division. Defendant prays that: (1) this Court proceed in this action pursuant to 28

////

////

////

U.S.C. § 1447, as if this action had been originally been filed in this Court; and (2) that further proceedings in the state court action be stayed in all respects.

DATED: March 16, 2010

VENABLE LLP

By: ______________________
Jason D. Strabo
Attorneys for Defendant
TOO LAZY, LLC

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

**EXHIBIT A**

ALAN HIMMELFARB - SBN 90480
KAMBEREDELSON, LLC
2757 Leonis Boulevard
Vernon, California 90058
Telephone: (323) 585-8696

*Attorney for Plaintiff*

FILED
JUL 23 2009

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN LUIS OBISPO

BILLYE SERABIAN, individually and on behalf of a class of similarly situated individuals,

Plaintiff,

v.

CELLCO PARTNERSHIP, a Delaware general partnership, TOO LAZY, LLC, a California limited liability company,

Defendants.

Case No. CV 090436

**CLASS ACTION COMPLAINT FOR:**

**(1) Violation of Cal. Civ. Code § 1770; and**
**(2) Violation of Cal. Bus. & Prof. Code § 17200**
**(3) Unjust Enrichment;**
**(4) Trespass to Chattels;**
**(5) Tortious Interference with a Contract; and**
**(6) Breach of Contract**

DEMAND FOR JURY TRIAL

**CLASS ACTION COMPLAINT**

Plaintiff Joshua Heyman brings this Class Action Complaint against Defendants Cellco Partnership and Too Lazy, LLC seeking redress for Defendants' unlawful practice of charging cellular telephone customers for certain products and services the customers have not authorized. Plaintiff, for his Class Action Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**PARTIES**

1. Plaintiff is a resident of Connecticut.

2. Defendant Cellco Partnership ("Verizon") is a cellular telephone carrier. Verizon is a Delaware general partnership, with its principal place of business in New Jersey. It does business throughout the State of California and in this County.

3. Defendant Too Lazy, LLC ("Too Lazy") is a mobile content provider that provides premium mobile content services. Mobile content for cellular telephones consists of, among other things, ringtones, games, graphics, horoscopes, news, and other products and services. Too Lazy is a California limited liability company with its headquarters and principal place of business at 110 Mustang Dr., Suite 205, San Luis Obispo, California 93410. It does business throughout the State of California and in this County.

## JURISDICTION

4. The Court has jurisdiction over the causes of action asserted herein pursuant to the California Constitution, Article VI, §10, because the case is a cause not given by statute to other trial courts.

5. The Court has jurisdiction because the cause of action arose in this County.

## VENUE

6. Venue is proper in this Court pursuant to Code of Civil Procedure because defendant Too Lazy, LLC resides in the County.

## CONDUCT COMPLAINED OF

7. The case arises from two closely related phenomena. The first is the capability of most cellular telephones, not only to make and receive telephone calls, but also to send and receive text messages, including – most significantly for present purposes – "premium" text message services. These services, also known as "mobile content," include products that range from the basic (customized ringtones for use with cell phones, sports score reports, weather alerts, stock tips, horoscope services, and the like) to those requiring more advanced capabilities (such as direct payment services, interactive radio and participatory television).

8. The second underlying phenomenon of the case constitutes its very core. That is, just as providers of premium mobile content deliver their products by means of cell phone technology, they likewise charge and collect from their customers by "piggybacking" on the cell phone bills sent out by wireless carriers. Further, because mobile content providers by themselves most often lack the wherewithal to negotiate the necessary relationships with the much larger wireless carriers, they do so with the help of third-party companies known as aggregators. These aggregators act as middle-men, representing numerous mobile content providers in arriving at the agreements that allow them to use wireless carriers' billing and collection mechanisms. In turn, both the aggregators and wireless carriers are compensated for their services to the mobile content providers by retaining a substantial percentage of the amount charged in each premium mobile content transaction.

9. The rapid and largely unplanned growth of the premium mobile content industry has led both to the above-described structure and to a disastrous flaw within it. That flaw is an open secret within the industry, but little understood outside of it. In short, the billing and collection systems established by companies, including Defendants, in aid of the premium mobile content industry that enriches them are conspicuously free of any checks or safeguards to prevent erroneous and unauthorized charges from being added to consumers' bills.

10. Unlike transactions made using checks and credit cards, which require a signature or a highly private sixteen-digit credit card number, the only information mobile content providers such as Too Lazy need to charge a consumer for its products is the consumer's cellular telephone number. Once a mobile content provider has a consumer's cell phone number, it can cause that consumer to be billed for services and products irrespective of whether the consumer actually agreed to purchase them.

11. Mobile content providers such as Too Lazy can simply provide that cellular phone number, along with an amount to be charged, to a billing aggregator, such as OpenMarket, Inc. The aggregator, in turn, instructs the relevant cellular carrier to add the

charge to the bill associated with that number. The charge will then appear on the consumer's cell phone bill, often with only minimal, cryptic identifying information.

12. In order to tap into the emerging wireless content marketplace and make content services available to wireless consumers, content providers must first obtain access to wireless carriers' mobile communications networks and frequently do so by "partnering" with aggregators – intermediary companies that offer content providers (their "content provider partners") direct access to the carriers through existing relationships. This allows content providers to focus on developing and marketing branded content, applications, and programs while aggregators manage the complex carrier relationships, distribution, billing, and customer service.

13. Aggregators operate mobile transaction networks that help companies develop, deliver, and bill for mobile content services to compatible mobile devices throughout the State of California and the nation.

14. By using their end-to-end technology platforms, their relationships with U.S. carriers, and other value-added services, these aggregators have forged a crucial link between wireless carriers and mobile content providers. They have enabled the transformation of wireless technology into a marketing, content delivery, and collections process, while carving out a profitable role for themselves as very critical middlemen in the rapidly growing industry.

15. Too Lazy's aggregator partners such as OpenMarket, Inc. have developed a vast distribution system that integrates some of the largest wireless carriers nationwide, providing direct connections to hundreds of mobile operators.

16. While aggregators charge their content provider customers such as Too Lazy some upfront fees, their revenue is primarily generated through a "revenue share" on transactions for which they bill cell phone subscribers: each time a charge is incurred in connection with the purchase of mobile content services, the aggregator and/or the content provider cause said charge to be billed directly on the cellular telephone bill of the carrier's customer who currently owns and/or uses the telephone number (claimed to be) associated with said purchase.

17. The carrier, Verizon, then bills and collects the charge from their current subscriber, retains a portion of the proceeds as their "revenue share," and remits the balance

to the aggregator who has direct access to their network and who retains a percentage of the balance in the form of their own "revenue share." The aggregator then remits the remainder directly to the mobile content provider (or, in some instances, to another aggregator who retains a percentage of the balance in the form of their own "revenue share" and remits the balance to their mobile content provider client).

18. Aggregators have in the United States registered numerous transactions and processed significant amounts of money in transactions over recent years and have profited greatly from their arrangement with their industry partners. Many of such transactions are known to be unauthorized by OpenMarket yet it continues to process such charges unabated, even though many of its industry partners have become the subject of government investigation.

19. Too Lazy's and Verizon's continued conduct in billing telephone subscribers for premium content, combined with its failure to implement a billing system that would ensure only consumers who did, in fact, authorize charges for such services were billed for them, is a deliberate strategy by Defendants to unlawfully collect small sums of money from a large number of consumers. And while it has always been within the power of companies such as Defendants to institute simple and effective measures that would prevent this, they have instead knowingly maintained the very system that has allowed these erroneous charges. Indeed, Defendants have reaped and retained their shares of the improper collections.

**THE FACTS RELATING TO NAMED PLAINTIFF**

20. During the relevant period, Plaintiff purchased new cell phone service from Verizon for her personal use.

21. On that same day, in exchange for a cellular telephone service plan, Plaintiff agreed to pay her carrier a set fee for a period of several months.

22. Beginning in or about 2009, Plaintiff's cell phone account was charged by Defendants for unwanted mobile content services.

23. During the relevant time period, Defendants caused Plaintiff to be charged service fees in the amount of several dollars for such mobile content charges.

24. At no time did Plaintiff authorize the purchase of these products and services offered by Defendants.

25. At no time did Plaintiff authorize Defendants or anyone else to bill her for these charges

26. At no time did Defendants verify Plaintiff's purported authorization of these charges.

27. Defendants have yet to provide a full refund of the unauthorized charges consisting of the premium text message charges, ordinary text messages, data charges, back interest, lost time spent in pursuit of recovery, nor have they implemented adequate procedures to ensure that such unauthorized charges would not appear in future billing periods and/or given an assurance that such unauthorized charges would not appear in future billing periods.

**CLASS ALLEGATIONS**

28. Plaintiff brings the action, pursuant to Code of Civil Procedure § 382 on behalf of herself and a class and subclass (the "Classes"), defined as follows:

> The Class ("Too Lazy Class"): All wireless telephone subscribers in the nation who suffered losses or damages as a result of Too Lazy billing for mobile content products and services not authorized by the subscriber; provided, however, that the following are excluded from the Class: (i) Defendants, and (ii) any employee of the Defendant.

> The Subclass ("Verizon Subclass"): All Verizon wireless telephone subscribers in the nation who suffered losses or damages as a result of Verizon billing for products or services associated with Too Lazy not authorized by the subscriber; provided,

however, that the following are excluded from the Class: (i) Defendants, and (ii) any employee of the Defendant.

29. The Classes consists of thousands of individuals and other entities, making joinder impractical, in satisfaction of Code of Civil Procedure § 382.

30. Plaintiff's claims are typical of the claims of all of the other members of the Classes.

31. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting the action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Classes.

32. Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

33. Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Classes, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

34. The factual and legal bases of Defendants liability to Plaintiff and to the other members of the Classes are the same, resulting in injury to Plaintiff and to all of the other members of the Classes. Plaintiff and the other members of the Classes have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct.

35. There are many questions of law and fact common to Plaintiff's claims and the claims of the other members of the Classes; those questions predominate over any questions that may affect individual members of the Classes.

36. Common questions for the Class and/or Subclass include but are not limited to the following:

(a) Whether Defendant Too Lazy has unjustly received money belonging to Plaintiff and the Classes and whether under principles of equity and good conscience, Defendant should not be permitted to retain it.

(b) Whether Defendant Too Lazy tortiously interfered with contracts between Plaintiff and the Classes, on the one hand, and their wireless carriers, on the other hand, by causing them to be charged by their carriers for products and services they never authorized.

(c) Whether Defendant Too Lazy's conduct described herein violates California Business and Professions Code §§17200, *et seq*.

(d) Whether Verizon's conduct amounts to breach of contract.

**COUNT I**
**(Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 on behalf of the Class)**

37. Plaintiff incorporates by reference the foregoing allegations.

38. Defendant's communications to aggregators and carriers falsely state that Plaintiff and the other members of the Class have approved, authorized, and/or consented to charges for mobile content services, and are deceptive and unfair. Further, Defendants' communications are unlawful because they violate the Computer Fraud and Abuse Act FAA and/or the Federal Communications Act.

39. The acts alleged above are unlawful, unfair or fraudulent business acts or practices and constitute unfair competition under Cal. Bus. & Prof. Code § 17200.

40. Plaintiff, on her own behalf and on behalf of the other members of the Class and Subclass, seeks an order enjoining Defendant's unfair competition alleged herein, and the imposition of a constructive trust on and restitution of property gained by such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well as interest and attorneys' fees and costs pursuant to, in part, Cal. Code Civ. Proc. § 1021.5.

**COUNT II**
**(Restitution/Unjust Enrichment on behalf of the Class)**

41. Plaintiff incorporates by reference the foregoing allegations.

42. A benefit has been conferred upon Defendants by Plaintiff and the members of the Class and Subclass. Defendants have received and retain money belonging to Plaintiff and the members of the Class and Subclass as a result of their billing and collecting significant amounts of money in unauthorized mobile content charges.

43. Defendants appreciate or have knowledge of said benefit.

44. Under principles of equity and good conscience, Defendants should not be permitted to retain money belonging to Plaintiff and the members of the Class and Subclass that they unjustly received as a result of their actions.

45. Plaintiff and the members of the Class and Subclass have suffered loss as a direct result of Defendants' conduct.

46. Plaintiff, on her own behalf and on behalf of the other Class and Subclass members seeks the imposition of a constructive trust on and restitution of the proceeds from Defendants unauthorized charges, as well as attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**COUNT III**
**(Trespass to Chattels on behalf of the Class against Defendant Too Lazy)**

47. Plaintiff incorporates by reference the foregoing allegations.

48. Defendant Too Lazy and/or their agents intentionally and without consent, transmitted mobile content to Plaintiff's cellular phone and the wireless devices of the members of the Class and Subclass.

49. In the course of transmitting mobile content to these wireless devices, Defendant Too Lazy and/or its agents intentionally and without consent, gained access to these devices, used these devices, occupied the memory of these devices, and/or dispossessed Plaintiff and the members of the Class and Subclass of unencumbered access to their wireless devices.

50. Plaintiff owns, possesses, and uses her cellular phone. Likewise, the members of the Class and Subclass own, possess, and use the wireless devices to which Defendants transmitted or caused to be transmitted mobile content. These wireless devices are the personal property of the members of the Class and Subclass.

51. In so doing, Defendant Too Lazy intentionally intermeddled with, damaged, and deprived Plaintiff and the members of the Class and Subclass of their wireless handsets, or a portion thereof. The damage included, but was not limited to, the unauthorized charges for mobile content that Defendant Too Lazy obliged Plaintiff and the other members of the Class and Subclass to pay. Defendant Too Lazy trespassed on the chattels of Plaintiff and the other members of the Class and Subclass.

52. Plaintiff, on her own behalf and on behalf of the other members of the Class and Subclass, seeks damages from Defendant Too Lazy's trespass, as well as attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**COUNT IV**
**(Tortious Interference with a Contract on Behalf of the Class against Defendant Too Lazy)**

53. Plaintiff incorporates by reference the foregoing allegations.

54. Plaintiff and the members of the Class and Subclass had contractual relationships with their wireless carriers whereby they agreed to pay a certain sum of money

in exchange for activation of their cellular telephone accounts and their carriers' promise to provide various communication and related services, and to bill Plaintiff and the members of the Class and Subclass only for those products or services the purchase of which they authorized.

55. Defendant Too Lazy knew of said contractual relationships and intended to and did induce a breach or disruption of those relationships.

56. Defendant Too Lazy intentionally interfered with said contractual relationships through improper motives and/or means by knowingly and/or recklessly continually causing unauthorized charges to be placed on the cellular telephone bills of Plaintiff and the Class and Subclass.

57. Plaintiff and the other members of the Class and Subclass suffered loss as a direct result of Defendant Too Lazy's conduct.

58. Plaintiff, on her own behalf and on behalf of the other Class and Subclass members, seeks damages for Defendant Too Lazy's tortious interference, as well as attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**COUNT V**

**(Breach of Contract on Behalf of the Subclass against defendant Verizon)**

59. Plaintiff incorporates by reference the foregoing allegations.

60. Plaintiff and the Subclass entered into substantially identical agreements with Defendant Verizon whereby Plaintiff and Verizon agreed to pay a certain sum of money in exchange for Verizon activation of Plaintiff's cellular telephone accounts and promised to provide various communication and related services to Plaintiff and the Subclass.

61. Defendant Verizon expressly and/or impliedly agreed to provide Plaintiff and the Subclass with a cellular telephone number free of unauthorized charges for mobile content products and services.

62. Defendant Verizon further expressly and/or impliedly agreed to bill Plaintiff and the Subclass only for products or services the purchase of which they had authorized.

63. Defendant Verizon further expressly and/or impliedly agreed to carry out their obligations in good faith and fair dealing.

64. Defendant Verizon breached its contractual obligations by providing Plaintiff and the Subclass with cellular telephone accounts that included unauthorized charges for mobile content.

65. Defendant Verizon further breached its contractual obligations, including its contractual obligation of good faith and fair dealing, by thereafter billing Plaintiff and the Subclass for products or services, the purchase of which they never authorized.

66. Plaintiff and the Subclass have performed their obligations under the contracts.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Billye Serabian, on behalf of herself and the Class and Subclass, prays for the following relief:

a) Certify the case as a class action on behalf of the Class and Subclass as defined above, appoint Billye Serabian as representative of the Class and Subclass, and appoint the undersigned as lead counsel;

b) Declare that Defendants' actions, as set out above, constitute unjust enrichment, trespass to chattels, and tortious interference with a contract, and violate Cal. Civ. Code § 1770 and Cal. Bus. & Prof. Code § 17200;

c) Enter judgment against Defendants for all economic, monetary, actual, consequential, and compensatory damages caused by its conduct, and if its conduct is proved willful, award Plaintiff and the Class and Subclass exemplary damages;

d) Award Plaintiff and the Class and Subclass reasonable costs and attorneys' fees;

e) Award Plaintiff and the Class and Subclass pre- and post-judgment interest;

f) Enter judgment for injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Class and Subclass; and

g) Award such other and further relief as equity and justice may require.

**JURY DEMAND**

Plaintiff requests trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: July 23, 2009

KAMBEREDELSON, LLP

By: ______________________
ALAN HIMMELFARB
One of the Attorneys for BILLYE SERABIAN, individually and on behalf of others similarly situated individuals

ALAN HIMMELFARB - SBN 90480
KAMBEREDELSON, LLC
2757 Leonis Boulevard
Vernon, California 90058
Telephone: (323) 585-8696

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is Venable, LLP 2049 Century Park East, Suite 2100, Los Angeles, California.

On **March 16, 2010**, I served the foregoing document(s) described as NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441 (B) [DIVERSITY/CLASS ACTION FAIRNESS ACT] on the interested parties in this action addressed as follows:

Sean Reis
sreis@edelson.com
Edelson McGuire LLP
7700 Irvine Center Drive, Suite 800
Irvine, California 92618
Telephone: (714) 352.5200
Facsimile: (714) 352.5201

Dan Marmalefsky
dmarmalefsky@mofo.com
Morrison & Foerster LLP
555 West Fifth Street
Los Angeles, California 90013-1024

☑ By placing true copies thereof enclosed in a sealed envelope(s) addressed as stated above.

☑ **BY MAIL (FRCP 5(b)(2)(C)):** I am readily familiar with the firm's practice of collection and processing correspondence for mailing with the U.S. Postal Service. Under that practice such envelope(s) is deposited with the U.S. postal service on the same day this declaration was executed, with postage thereon fully prepaid at 2049 Century Park East, Suite 2100, Los Angeles, California, in the ordinary course of business.

☐ **BY FACSIMILE (FRCP 5(b)(2)(E) and (F)):** Pursuant to FRCP 5(b)(1)(E), on __________, at approximately __________ I served the above stated document by facsimile from the facsimile machine of Venable, LLP whose phone number is (310) 229-9901 to the addressee(s) at the facsimile numbers as stated above. The facsimile machine used complies with CRC Rule 2003(3). Pursuant to CRC Rule 2008(e) the transmission be facsimile was reported as complete and without error.

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on **March 16, 2010**, at Los Angeles, California.

DAVID ZELITZKY

VENABLE LLP
2049 CENTURY PARK EAST
LOS ANGELES, CALIFORNIA 90067